IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ENDEAVOR ENERGY RESOURCES,** **L.P.,** a Texas Limited Partnership, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13cv542 |
| | ) | **Electronic Filing** |
| **GATTO & REITZ, LLC,** a Pennsylvania Limited Liability Company, | ) ) | |
| | ) | |
| Defendant / Third Party Plaintiff, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **RIDEC, INC., MARCELLUS** **MINERAL GROUP, LLC** and **JAMES C. ELLIS**, | ) ) ) | |
| | ) | |
| Third Party Defendants. | ) | |

## OPINION

I. **INTRODUCTION**

Plaintiff Endeavor Energy Resources ("Endeavor" or "plaintiff"), a Texas entity,

commenced this action against defendant Gatto & Reitz ("G&R"), a Pennsylvania law firm,

seeking redress for the alleged improper distribution of funds that G&R held in escrow.

Presently before the court is G&R's motion to compel production of various documents withheld

from discovery by Endeavor pursuant to the attorney-client and work-product privileges. The

motion also seeks to have more detailed information set forth in Endeavor's privilege log with

regard to additional withheld documents. In its response to the motion Endeavor volunteered to

produce the documents for *in camera* review and pursuant to that offer the court has received and

reviewed the documents. For the reasons set forth below, G&R's motion will be granted in part

and denied in part. Endeavor will be ordered to disclose certain documents forthwith and to

provide more detailed information in its privilege log with regard to the additional withheld documents. The motion will be denied in all other aspects.

In its complaint Endeavor advances claims for breach of contract, breach of fiduciary duty, conversion, fraud and civil conspiracy and seeks to recover $2,702,500.00 that was held in escrow as well as related damages, fees and costs. G&R assertedly was not to distribute the escrow funds until (1) RIDEC, Inc. ("RIDEC"), a Pennsylvania entity, entered into an oil and gas lease on terms that were acceptable to Endeavor and (2) Endeavor authorized G&R to release the funds in writing. The escrow funds were being held in trust from a prior attempted oil and gas lease that was never consummated. Thereafter, an understanding was reached that the funds would be used to (1) pay a lease-signing bonus to RIDEC upon consummation of the contemplated RIDEC lease (the "RIDEC lease") and (2) pay a fee to Marcellus Mineral Group, LLC ("MMG"), a Pennsylvania entity controlled by Pennsylvania resident James C. Ellis ("Ellis"), for brokering the lease between RIDEC and Endeavor. Plaintiff avers that it did not get a lease that contained the terms which it had insisted on as acceptable and G&R failed to follow Endeavor's instructions to not distribute the escrow funds and return them to Endeavor.

G&R filed an answer denying liability and a third-party complaint against RIDEC, MMG, and Ellis (collectively the "third-party defendants") seeking indemnification in the event G&R is held liable for distributing the escrow funds. G&R advances claims for declaratory relief and unjust enrichment. It seeks a declaration that a binding lease was entered between Endeavor and RIDEC. In the event Endeavor and RIDEC did not agree to a lease, it seeks to recoup the funds that the third-party defendants received from G&R's distribution of the escrow account pursuant to an equitable theory of unjust enrichment.

RIDEC answered the third-party complaint and filed a counterclaim against G&R, crossclaims against Ellis and MMG, and a claim against Endeavor. RIDEC advances claims for

breach of contract, negligence, promissory estoppel and unjust enrichment against Endeavor, breach of contract, negligent misrepresentation and unjust enrichment against G&R, and breach of contract, negligent misrepresentation and unjust enrichment against Ellis and MMG. RIDEC asserts that for over a year none of the other parties informed it of Endeavor's contention that the lease was invalid and the first notice it received of that contention was G&R's third-party complaint, notwithstanding Endeavor having informed the other parties at least a year earlier that the lease did not contain the terms to which it had agreed. RIDEC maintains that disgorgement of the signing bonus received from the G&R escrow account would be unjust because RIDEC labored under the understanding that Endeavor obtained a valid lease for over one year of a two year lease and RIDEC was unable to lease its land during what it thought was the lease's two-year term. RIDEC also complains that (1) it was never made aware that Ellis was affiliated with MMG and (2) Ellis received a grossly disproportionate fee for facilitating the RIDEC lease. It maintains that under these circumstances it would be a breach of its rights and inequitable for it to have to return the money received from the escrow account as a bonus for signing the RIDEC lease.

Endeavor fired a return salvo of claims against G&R and the third party defendants. These consist of breach of contract, aiding and abetting breach of fiduciary duty, conversion, fraud, unjust enrichment and civil conspiracy against Ellis and MMG, civil conspiracy against G&R and unjust enrichment and constructive trust against RIDEC. In the event that the RIDEC lease is determined to be valid, Endeavor seeks to recover the bonuses and fees paid to the third-party defendants because, in that scenario, the third-party defendants (potentially with G&R's support) mislead Endeavor into believing that the RIDEC lease contained Endeavor's demanded terms when, in reality, it did not. And this in turn assertedly caused Endeavor to release the escrow funds under misleading or false pretenses.

It is against this backdrop that the court turns to the pending discovery dispute involving documents withheld on the basis of the attorney-client and work-product privileges. G&R contends that the documents will evidence Endeavor's treatment and/or belief that the RIDEC lease was valid. From its perspective the documents are discoverable because either Endeavor disclosed them to or they were produced by a third-party independent contractor, Don B. Estill ("Estill"), who did not communicate directly with Endeavor's general counsel Michael Short ("Short"). It reasons that because Pennsylvania law does not equate independent contractors with corporate employees or agents, the attorney-client privilege does not apply. Likewise, Endeavor purportedly did not hire Estill in anticipation of litigation; and it also failed to meet its burden to prove that the documents disclosed to or produced by Estill were made in anticipation of litigation, thereby preventing application of the work-product doctrine. G&R thus concludes that without the protection of the attorney-client privilege and work-product doctrine, the documents are discoverable.

Endeavor responds that the attorney-client privilege and work-product doctrine shield the documents from discovery. It posits that Pennsylvania law implicitly recognizes a functional-equivalent doctrine that permits courts to treat independent contractors in the same manner as corporate employees or agents for attorney-client privilege purposes under appropriate circumstances. Applying this understanding of the attorney-client privilege, Estill assertedly is functionally an Endeavor employee whose conversations regarding legal matters are not subject to disclosure. The work-product doctrine also protects the documents G&R seeks because Endeavor disclosed the documents to Estill or he produced them in order to prepare for litigation. Thus, Endeavor maintains that all documents properly have been withheld as privileged.

G&R's motion to compel production will be granted as to ENDEAVOR 735–36 and ESTILL 169–171, 172–182, 185, 186–87, 198–99, 201 (starting with the Short email on the

bottom of ESTILL 201)–203. The motion to compel production will be denied and the court will issue a protective order as to ENDEAVOR 578, 580–604, 607–21, 646–57, 711–14, 753–57 and ESTILL 1–168, 183–184, 188–197, 200, 201 (not including Short's email to Bradley Reitz on the bottom of ESTILL 201), and 204–362.

## II.    DISCOVERY DISPUTE BACKGROUND

The origins of this particular discovery dispute arose when Estill, a "contract landman," appeared for a deposition on January 20, 2015. (Docket Nos. 133 at ¶ 7; 133-4 at 12:6-7). There, a conflict quickly emerged over whether information Estill obtained from and exchanged with Gilmour is protected. For instance, Endeavor's counsel instructed Estill not to answer "any follow-up questions to the degree that Mr. Gilmour discussed anything with you that Mr. Short and he discussed." (Docket No. 133-4 at 72:4-7). Estill's counsel stated: "after February or March of 2013, I think, that virtually everything . . . that Mr. Estill or his company did after, say, January of 2013, . . . certainly March of '13 was in connection with the litigation." (Docket No. 133-4 at 115:24–116:4).[1]

G&R requests the court compel Endeavor to produce documents bates stamped ESTILL 1–362 and ENDEAVOR 578, 580–603, 604, 607–21, 646–57, 711–14, 735–36, and 753–57. These documents were "disclosed to Estill." (Docket No. 133 at ¶ 17). Endeavor thereafter removed them from Estill's possession. (Docket No. 133 at ¶ 6). And these documents do not include direct communications between Short and Estill. (Docket No. 133 at ¶ 14). With regard to these interactions, Estill admitted he could not recall "any conversations directly with [Short], but [only knew] in [his] conversations with [Gilmour] that the information he was giving me had been discussed with [Short]." (Docket No. 133-4 at 96:4-7). G&R thus contends that the

---

[1] These statements by Estill's counsel mirror Endeavor's current position with regard to the documents G&R seeks.

documents only contain communications between Gilmour and Estill that were derived from Gilmour's communications with Short and as a result they are discoverable. (Docket No. 133 at ¶ 15).

The record does not indicate that Estill was Endeavor's employee or agent. During his deposition Estill defined the nature of his relationship with Endeavor:

> Q     Endeavor . . . refers to you as their agent. Are you aware of that?
> A     I'm not their agent.
> Q     Okay . . . what's your understanding of an agent?
> A     I don't know what the definition is, but I'm a contractor. I don't have any authority to act on their behalf, so I don't consider myself an agent. I consider myself a contractor.

(Docket No. 133-4 at 19:16-24). Endeavor pays Estill through invoices. (Docket No. 133-4 at 19:2-5).

Estill described his work as providing "contract land services" including assisting Endeavor's "exploration and operations" anywhere Endeavor "want[s] me to go." (Docket No. 133-4 at 18:15-23). Specific tasks he performed included running title searches and reviewing leases. (Docket No. 133-4 at 27:11-16). He ran a title search on "the RIDEC land" at Short's instruction. (Docket No. 133-4 at 27:19–28:10). He also described running a title search occurring in "early—maybe March of 2013" at Gilmour's instruction. (Docket No. 133-4 at 30:9–31:7). The purpose of this search was "to verify . . . that RIDEC owned the oil and gas rights." (Docket No. 133-4 at 33:15-23).[2]

## III.   DISCUSSION

### A.   Attorney-Client Privilege

_____

[2] Estill is not the only contract landman employed by Endeavor. Endeavor has "four or five . . . employees that are landmen" and "several contract landmen that are in and out of the office constantly." (Docket No. 133-7 at 9:10-15).

Federal courts in diversity cases must look to state law when contemplating attorney-client privilege issues.  See Fed. R. Evid. 501; United Coal Co. v. Powell Constr. Co., 839 F.2d 958, 965 (3d Cir. 1988).  Pennsylvania's attorney-client privilege rule has been codified since 1887.  Nationwide Mut. Ins. Co. v. Fleming, 992 A.2d 65, 68 (Pa. 2010) (Eakin, J.) (affirming Superior Court by equally divided Pennsylvania Supreme Court); accord Upjohn v. United States, 449 U.S. 383, 389 (1981) (the attorney-client privilege is "one of the oldest of the privileges for confidential communications known to the common law.").  The current statute states: "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."  42 Pa. C. S. § 5928.  "[T]he attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice."  Gillard v. AIG Ins. Co., 15 A.3d 44, 59 (Pa. 2011).

The showing necessary to establish the privilege is settled:

> [when] (1) legal advice of any kind is sought (2) from a
> professional legal adviser in his capacity as such, (3) the
> communications relating to that purpose, (4) made in confidence
> (5) by the client, (6) are at his insistence permanently protected (7)
> from disclosure by himself or by the legal adviser, (8) except the
> protection be waived.

In re Grand Jury, 603 F.2d 469, 474 (3d Cir.1979) (citing J. Wigmore, EVIDENCE § 2292 at 554 (1961)); see also In re Impounded, 241 F.3d 308, 316 n.6 (3d Cir. 2001).

"The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege."  In re Grand Jury, 603 F.2d at 474 (citing among other cases United States v. Landof, 591 F.2d 36, 38 (9th Cir.1978)).  Once the privilege-invoking party provides facts showing the privilege is applicable, "the burden shifts to the party seeking

disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege." Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs. L.P., 108 A.3d 54, 62 (Pa. Super. Ct. 2015) (quoting Custom Designs & Mfg. Co. v. Sherwin-Williams Co., 39 A.3 372, 376 (Pa. Super. Ct. 2012)). "[I]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." Id. (internal citations and quotation marks omitted).

The attorney-client privilege serves laudable purposes and thus is "worthy of maximum legal protection." Haines v. Liggett Group Inc., 975 F.2d 81, 90 (3d Cir. 1992). Nevertheless, the privilege obstructs the truth-finding process and is to be construed narrowly. Westinghouse Elec. Corp. v. Republic of Phil., 951 F.2d 1414, 1423 (3d Cir. 1991). The privilege "'protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" Id. (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)).

"In Pennsylvania, the attorney-client privilege is an absolute privilege; it is not a limited privilege that is inapplicable whenever a court determines that the case cannot be fairly decided if the privilege is invoked." Mueller v. Nationwide Mut. Ins. Co., 31 Pa. D. & C. 4th 23, 1996 WL 910155, at *31 (Ct. of Com. Pleas of Allegheny County, May 22, 1996) (Wettick, J.). Nevertheless, "[p]rotection under attorney-client privilege is subject to limits, exceptions, and waiver." Nationwide Mut. Ins. Co. v. Fleming, 924 A.2d 1259, 1265 (Pa. Super. 2007), abrogated on other grounds by Gillard, 15 A.3d 33.

A client can waive the attorney-client privilege in a number of ways. One is by disclosing a protected communication to a third party. Id. (citing Loutzenhiser v. Doddo, 260 A.2d 745, 748 (Pa. 1970); Joe v. Prison Health Services, Inc., 782 A.2d 24, 31 (Pa. Commw. Ct. 2001)). Such a disclosure "has long been considered inconsistent with an assertion of the

privilege." <u>Westinghouse Elec. Corp.</u>, 951 F.2d at 1424 (citing <u>United States v. AT & T</u>, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

The parties dispute whether the attorney-client privilege applies because Estill was not an Endeavor employee or agent and Endeavor agrees that Estill was and is an independent contractor. Notwithstanding this, Endeavor argues that Estill "acted as the functional equivalent of an Endeavor employee and was involved in various communications so that Endeavor could obtain legal advice from . . . Short . . . and its outside counsel." (Docket No. 139 at p. 3).

The functional-equivalent test permits a court to treat independent contractors as employees for the purposes of the attorney-client privilege if the particular contractor acted as the "functional equivalent" of an employee. <u>Smith v. Unilife Corp.</u>, No. 13-5101, 2015 WL 667432, at *2 (E.D. Pa. Feb. 13, 2015). But the court must look to Pennsylvania law on attorney-client privilege because this is a diversity case. <u>See</u> Fed. R. Evid. 501; <u>United Coal Co.</u>, 839 F.2d at 965. And the Pennsylvania courts have not squarely decided whether a corporation's independent contractor can be considered the functional equivalent of an employee for attorney-client privilege purposes.[3] Pennsylvania statutes likewise do not address whether the functional-equivalent doctrine applies here. Nor has any federal court predicted that the doctrine is engrafted into Pennsylvania law.

*1.    Predicting Pennsylvania Law*

The lack of prior precedent squarely addressing the issue does not mean that the functional equivalent doctrine does not apply. In the absence of a controlling opinion from a state's highest court on an issue of state law, a federal court must predict how that court would

---

[3] Endeavor acknowledges this. (Docket No. 139 at 3) ("It does not appear as though any Pennsylvania state court has specifically addressed the functional equivalent test") (internal quotation marks omitted).

decide the issue. City of Phila. v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 123 (3d Cir. 1993). When predicting state law, a district court is to give due regard, but not conclusive effect, to the decisional law of lower state courts. And in doing so the opinions of intermediate appellate state courts are not to be disregarded unless the court is convinced by other persuasive data that the highest court of the state would decide the matter differently. P. Emp'rs Ins. Co. v. Glob. Reinsurance Corp. of Am., 693 F.3d 417, 433 (3d Cir. 2012) (internal quotations omitted); West v. AT&T Co., 311 U.S. 223, 237 (1940).

Beyond the obvious distinction that an independent contractor is not on a corporation's payroll while a corporate employee is, on a micro level the difference between independent contractors and employees as to the application of the attorney-client privilege is minimal at best. For starters, "[t]he [attorney-client] privilege is available to corporate as well as individual clients." Red Vision Sys., Inc., 108 A.3 at 60 (citing Custom Designs & Mfg. Co., 39 A.3 at 376). The privilege also "'extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf.'" Pa. State Univ. v. W.C.A.B. (Sox), 83 A.3d 1081, 1092 (Pa. Commw. Ct. 2013) (quoting In re Condemnation by City of Phila. in 16.2626 Acre Area, 981 A.2d 391, 396 (Pa. Commw. 2009)). Discussing whether a practical difference exists between applying the attorney-client privilege to employees versus independent contractors, a respected secondary source states:

> If the consultant was directed by the client to communicate with the client's attorney, and it was clear to the consultant that those communications were for the purpose of obtaining legal advice, and therefore, were confidential, the extension of the privilege's protection would place neither the client, the consultant, nor the attorney in a position different than they would have been in had the consultant been a "permanent" employee.

Paul R. Rice *et al.*, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 4:19 (2016).

Further, "[w]hen . . . third parties have an established working relationship with the corporate

client that is similar to that of regular employees, courts are increasingly treating them like

regular employees for purposes of the privilege." Id.

One of our sister courts, the United States District Court for the Eastern District of

Pennsylvania ("Eastern District"), explained what the primary focus of the attorney-client

privilege inquiry in this context should be:

> Focusing on whether the communication to the consultant was kept
> confidential and made for the purpose of providing or obtaining
> legal advice is more consistent with the principles articulated by
> the United States Supreme Court in Upjohn. In that case, the
> Supreme Court rejected the "control-center" test that had been
> applied previously, and found that the realities of the manner in
> which corporations function—through their employees—required
> that communications with those employees be protected if kept
> confidential and necessary for the purpose of legal advice.
> Upjohn, 449 U.S. at 391–92.
>
> It makes little sense to impose additional requirements for
> extending the privilege to independent contractors merely because
> they are not on the corporate payroll. In re Copper Mkt. Antitrust
> Litig., 200 F.R.D. 213, 219 (S.D.N.Y. 2001). The difference is
> only one of formality, and does not in itself diminish the need for
> the attorney and non-lawyer to collaborate to ensure that the
> corporation is complying with the law. Extending the privilege to
> a consultant performing a role similar to that of an employee, to
> the same extent as it applies to a corporate employee, simply
> 'reflects the reality that "corporations increasingly conduct their
> business not merely through regular employees but also through a
> variety of independent contractors retained for specific purposes."'
> In re Flonase Antitrust Litig., 879 F. Supp. 2d 454, 460 (E.D. Pa.
> 2012) (quoting Edna Selan Epstein, THE ATTORNEY[-]CLIENT
> PRIVILEGE AND THE WORK[-]PRODUCT DOCTRINE 269 (5th ed.
> 2007)). Where a consultant performs a similar role to an
> employee, confidential communications made for the purpose of
> obtaining or providing legal advice should be subject to the
> attorney-client privilege regardless of whether the consultant was
> hired for a litigation or business purpose. Id.

King Drug Co. of Florence, Inc. v. Cephalon, Inc., Nos. 2:06–cv–1797, 2:08–cv–2141, 2013 WL

4836752, at *6 (E.D. Pa. Sept. 11, 2013).

Established principles embedded in Pennsylvania court cases supplement the Eastern District's rationale. Research has uncovered two Pennsylvania cases that address whether evidentiary privileges apply to independent contractors. Both the Superior Court of Pennsylvania ("Superior Court") and the Court of Common Pleas of Allegheny County ("Allegheny County Court") have rendered opinions that shed some guidance on the matter.

In <u>Commonwealth v. Simmons</u>, the Superior Court expounded on the scope of the psychotherapist-client privilege, which is "modeled after the attorney-client privilege." 719 A.2d 336, 340 (Pa. Super. Ct. 1998). The Superior Court reviewed whether a mental health patient's communications to an independent contractor working for an entity called Mentor Clinical Care fell within the psychotherapist-client privilege. <u>Id.</u> at 337–38. Because the independent contractor was a psychiatrist's subordinate and the communications were undertaken in order to facilitate review of the patient's treatment plan, the Superior Court ruled that the patient's communications to the independent contractor were privileged. <u>Id.</u> at 343–44. That the patient's communications were to an independent contractor did not stop the Superior Court from holding that the psychotherapist-client privilege applied. <u>Id.</u> at 344.

The other Pennsylvania case providing insight is <u>Irvin v. Mason</u>, which was decided by Allegheny County Court Judge R. Stanton Wettick Jr., a well-respected authority on Pennsylvania's discovery law. 59 Pa. D. & C. 4th 129 (Ct. of Com. Pleas of Allegheny County 2002). He wrote:

> [D]efendant apparently contends that the law will differentiate between communications between the client/potential client and an employee of the law firm and communications between a client/potential client and an independent contractor hired by the law firm. Defendant does not cite any case law supporting this proposition and none of the case law which I reviewed makes such a differentiation. Furthermore, there would be no reason to do so. The controlling issue is whether the non-attorney to whom the confidential communication is made is acting on behalf of a lawyer

12

in connection with legal services which the lawyer is providing or
may provide.

Id. at 136–37.  Commonwealth v. Simmons and Irvin v. Mason indicate that Pennsylvania

courts, when assessing whether the attorney-client privilege applies, are more interested in the

purpose of communications made to a non-attorney assistant than whether that assistant is an

employee, agent, or independent contractor.

Finally, a passage from the Pennsylvania Supreme Court does not directly suggest that

independent contractors can be considered the functional equivalent of corporate employees or

agents for purposes of the attorney-client privilege under appropriate circumstances, but its

rationale points in that direction.  In Gillard, the Pennsylvania Supreme Court opined that "it

would be imprudent to establish a general rule to require the disclosure of communications

which likely would not exist . . . but for the participants' understanding that the interchange was

to remain private." 15 A.3d at 57.  This reasoning suggests that  the Pennsylvania Supreme

Court would extend the attorney-client privilege to independent contractors working on behalf of

and/or in conjunction with corporate in-house and outside counsel on a legal matter of

importance to the corporate entity.

In contrast, the Pennsylvania Supreme Court could choose to utilize a textual approach

and determine that the functional-equivalent doctrine is inapplicable under Pennsylvania law.

The corporate iteration of the attorney-client privilege "'extends to communications between its

attorney and agents or employees authorized to act on the corporation's behalf.'"  W.C.A.B.

(Sox), 83 A.3d 1081, 1092 (Pa. Commw. Ct. 2013) (quoting In re Condemnation, 981 A.2d 391,

396 (Pa. Commw. Ct. 2009)).  Under a textual method, the Pennsylvania Supreme Court could

hold that because independent contractors are not actual agents or employees, they are excluded

from the corporate attorney-client privilege's protection.

Although the textual approach's simplicity and its fidelity to settled language has some appeal, such a mechanical approach repeatedly has been rejected in Pennsylvania's jurisprudence applying the attorney-client privilege. Three annunciations of the attorney-client privilege or its elements are instructive. As previously noted, the United States Court of Appeals for the Third Circuit has held that the attorney-client privilege applies when:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

In re Grand Jury, 603 F.2d at 474. Reiteration number two, which is Pennsylvania's codified form of the attorney-client privilege, provides: "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. C. S. § 5928. Version three requires the privilege-invoking party to establish the following:

> 1) The asserted holder of the privilege is or sought to become a client.
>
> 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
>
> 3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
>
> 4) The privilege has been claimed and [has] not [been] waived by the client.

Brown v. Greyhound Lines, Inc., 142 A.3d 1, 9 (Pa. Super. Ct. 2016) (quoting Red Vision Sys., Inc., 108 A.3d at 63–64) (internal citations omitted)).

None of these statements of Pennsylvania's attorney-client privilege include explicit, textual references to corporations or other business entities being potential holders of the privilege. Nevertheless, "[t]he [attorney-client] privilege is available to corporate . . . clients." Red Vision Sys., Inc., 108 A.3 at 60.

Moreover, a corporation is a legal entity that can act "only through its officers, directors, and other agents." Daniel Adams Assocs., Inc. v. Rimbach Publ'g, Inc., 519 A.2d 997, 1000 (Pa. Super. Ct. 1987). It is not possible for a corporation itself to seek an attorney's advice or enter into an attorney-client relationship. Thus, the proper boundaries of the relationship necessarily have to extend to those individuals who the corporation vests with the requisite authority to effectuate its legal interests and conduct its legal affairs. A rigid formula defining the individuals who can fall within the proper exercise of this authority would verge on an unworkable exercise in arbitrary line-drawing. We see no sound basis for engrafting such a requirement into Pennsylvania's attorney-client privilege jurisprudence.

Use of a textual approach to determine the scope of Pennsylvania's attorney-client privilege as it relates to corporate entities' use of independent contractors is fraught with pitfalls for misapplication. In this regard it would fail to provide a reliable framework for distinguishing between legitimate undertakings to obtain legal advice and improper use of the privilege for tactical advantage. In contrast, the functional-equivalent doctrine provides a fact-based inquiry that (1) is in line with current business trends, (2) is consistent with the established precedent, and (3) protects the purposes sought to be advanced by the privilege without unduly extending its application. Consequently, we conclude that the Pennsylvania Supreme Court will adopt the functional-equivalent doctrine when it is required to consider the issue.

Applying the functional-equivalent doctrine to the facts of this case, Estill easily qualifies as the functional equivalent of an Endeavor employee. He routinely performed the same type of

15

work as Endeavor employees who worked in the land department.  He provided "contract land services" and assisted Endeavor's "exploration and operations" anywhere Endeavor "want[ed] [him] to go."  (Docket No. 133-4 at 18:15-23).  He ran title searches and reviewed leases for Endeavor.  (Docket No. 133-4 at 27:11-16).  In other words, he was one of several contractors who performed the same and similar tasks to those performed by Endeavor's "landman" employees.  Thus, Endeavor is entitled to invoke the attorney-client privilege where it utilized Estill in an effort to inform counsel about pressing legal matters or formulate legal strategy.

*In camera* review has revealed that Estill identified and researched records, transactions and conveyances within this area of general services in order for Endeavor to gain informed legal opinions and make decisions about specific legal matters.  He also assisted by providing information to devise or refine legal strategy involving the instant dispute.  Considering that Estill followed Endeavor's instructions on where he should go and performed specific tasks in a legal context such as running title searches, reviewing leases, and gathering information to make informed decisions on legal matters and he understood that his conversations and undertakings involved matters that were legal in nature, the fact that he was not an Endeavor employee *per se* is not enough to retract the attorney-client-privilege umbrella over the communications in which he participated or defeat the invocation of the work-product doctrine.

It follows that despite Estill not being on Endeavor's payroll, if (1) he was communicating about matters with Short, Gilmour (who must be considered Short's subordinate), or Endeavor's outside counsel in Pennsylvania (Docket No. 139-1 at 17:15–18:9) in an effort to gather information on a legal matter under review by Endeavor and/or to facilitate the dispensing of legal advice to Endeavor, and (2) he and counsel overseeing the undertaking had an understanding that the undertaking was occurring in such a context, then it is proper to

infer that those communications were made under the veil of confidentiality that accompanies the attorney-client privilege.

> 2. *Applying the Attorney-Client Privilege to Endeavor's Privilege Log*

With the potential applicability of the attorney-client privilege to communications involving Estill having been established, the court will evaluate whether the documents G&R seeks to have disclosed should be protected or produced. Based on the record pertinent to this discovery dispute, some of Estill's job duties did not include discussions with Short, Gilmour, Endeavor's outside counsel in Pennsylvania or Dinsmore & Shohl attorneys. Nevertheless, he ran a title search on "the RIDEC land" at Short's instruction. (Docket No. 133-4 at 27:19–28:10). He also described running a title search on the RIDEC lease occurring in "early—maybe March of 2013" at Gilmour's instruction. (Docket No. 133-4 at 30:9–31:7). The purpose of the March 2013 search was "to verify . . . that RIDEC owned the oil and gas rights." (Docket No. 133-4 at 33:15-23). It was clear by that time that Endeavor was contesting the legal effects of the transaction that had recently transpired with G&R and the third-party defendants and by context and understanding Estill, Gilmour and Short all understood that the undertakings were designed to gain or formulate informed legal insight and assessments regarding the legal situation. It is through this lens that the court will filter the documents Endeavor submitted for *in camera* review.

> a. The Timelines of Events and Communications

The timelines consist of summaries of communications between individuals within Endeavor's corporate umbrella and events relating to attempted lease acquisitions and as such are protected from disclosure by the attorney-client privilege. All of the communications summarized in the timelines occurred confidentially, as they are between Endeavor officers and employees, Estill, and/or Endeavor's Pennsylvania counsel. The timelines are fairly construed as

17

being made to facilitate legal representation of Endeavor and provide one-stop, chronologically-organized sources of information relating to Endeavor's attempts to acquire natural-gas leases. Some documents also include analyses of lease provisions and the changes being considered from proposal to proposal. Thus, ESTILL 1–6 and 155–168 are protected from disclosure via the attorney-client privilege.

   b.    Communications Regarding Draft Leases and Lease Provisions

The attorney-client privilege also applies to documents containing draft leases and communications between Endeavor-affiliated individuals (including Estill) and outside counsel as well as notes memorializing conversations about preferred and negotiable lease provisions. All of the documents in this category are confidential and either sought, provided, or facilitated legal advice. The attorney-client privilege shields ENDEAVOR 580–604, 607–21 and 646–57 and ESTILL 204–304 and 308–43 from disclosure.

   c.    Communications Occurring Under Endeavor's Privilege Umbrella

Communications asking for and providing legal advice on Endeavor's proposed lease acquisitions, as well as emails exchanged between Endeavor-affiliated individuals regarding Endeavor's dealings, are protected from discovery by the attorney-client privilege. These documents range from maintaining attorney-client relationships with Pennsylvania outside counsel to discussions regarding legal issues that Endeavor was exploring in Southwest Pennsylvania. All communications within these documents are confidential and pertinent to legal representation. Therefore, ENDEAVOR 578 (the unredacted version), 711–14 and ESTILL 7, 63, 94, 100–02, 147–52, 183–84 and 200–01 (not including the Short email to Reitz on the bottom of ESTILL 201) are sheltered from disclosure pursuant to the attorney-client privilege.

   d.    The Remaining Documents for Which Production is Sought

18

The court has reviewed the remaining documents withheld on attorney-client privilege for which G&R seeks production through the instant motion and that have not been addressed above. *In camera* review has revealed that the attorney-client privilege properly has been invoked as to these documents in that the required showing has been satisfied. No further explanation is deemed necessary by the court.

### B.    Work-Product Doctrine

The work-product doctrine is codified in Federal Rule of Civil Procedure 26(b), which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless otherwise discoverable and the party shows substantial need for the material and the inability to obtain its substantial equivalent without undue hardship. FED. R. CIV. P. 26(b)(3). In the seminal case of Hickman v. Taylor, 329 U.S. 495 (1947), the Supreme Court first recognized the doctrine pursuant to the principle that permitting attorneys to prepare their cases without fear that their work product would be used against their clients advances the adversarial system. Id. at 510–11.

In United States v. Nobles, 422 U.S. 225, 238 (1975), the Supreme Court further opined that the doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." Included within this category are trial preparation documents that reflect the fruits of the attorney's endeavors, any compendium of evidence prepared by the attorney and any of the attorney's mental impressions, opinions or theories. Id. at 236–39. Also protected are those materials prepared by an attorney's agent. Id. at 238–39. However, when "relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." Hickman, 329 U.S. at 511.

The work-product doctrine "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation." United States v. Rockwell Intern., 897 F.2d 1255, 1265 (3d Cir. 1990). In contrast, the doctrine does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993).

A document is considered to be prepared "in anticipation of litigation [when] in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979). "The work-product immunity is not lost, however, if the document was not prepared in anticipation of the present litigation so long as it was prepared in anticipation of some litigation by a party to the present litigation." Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 168 F.R.D. 641, 645 (D. Minn. 1996). Moreover, even if documents were prepared for a different case, work-product protection may apply as long as the cases "are closely related in parties or subject matter." Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 309 (D.N.J. 2008).

The party seeking the protection has the burden of proving the doctrine applies. Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982). Once that burden has been met, protected work prepared in anticipation of litigation must be produced only under very limited circumstances and opinion work product is "afforded near absolute protection from discovery." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003). The work-product doctrine does not apply if the party seeking disclosure can demonstrate a substantial need for the material and the inability without undue hardship to obtain the substantial equivalent of it by other means. FED. R. CIV. P. 26(b)(3).

Endeavor is correct that disclosing work product to a third party—Estill—is not dispositive as to whether the doctrine applies. (Docket No. 139 at 5); Serrano v. Chesapeake Appalachia, LLC, 298 F.R.D. 271, 283 (W.D. Pa. 2014). "[A] party may continue to assert the protections of the work[-]product doctrine only when the disclosure to a third party furthers the doctrine's underlying goal." Serrano, 298 F.R.D. at 283.

Endeavor repeatedly has indicated that by at least by March of 2013 it believed that a legal dispute existed concerning whether it obtained a lease containing the specific terms to which it had agreed and that legal action was anticipated in order to pursue and preserve its legal rights. Beyond mere assertion and conjecture there is nothing in the record that counters Endeavor's position on this fact. It is through this lens that the court has reviewed the challenged documents identified in Endeavor's privilege log to determine whether they were "prepared in anticipation of litigation or for trial." FED. R. CIV. P. 26(b)(3).

    *1.    Draft Demand Letters*

The work-product doctrine protects Endeavor's draft demand letters from disclosure. The control of the letters, as well as the comments and revisions made to them by Endeavor-affiliated individuals, establish that they were made in anticipation of litigation. The comments and revisions on the draft letters are classic forms of work-product, and much of the commentary reflects the type of information that is given near absolute protection from disclosure. As a result, ENDEAVOR 753–57, and ESTILL 188–97 must be withheld from discovery.

    *2.    Maps of RIDEC Property*

The two maps of the RIDEC property Estill created are shielded from discovery by the work-product doctrine. Considering that Estill suggested edits to an Endeavor letter that was made in anticipation of litigation on February 24, 2013, it is clear that the maps produced directly

thereafter at Endeavor's direction also were made in anticipation of litigation. ESTILL 153 and 154 cannot be ordered to be disclosed.

3.     *The Remaining Documents for Which Production is Sought*

The court has reviewed the remaining documents withheld based on the work-product privilege and for which G&R seeks production through the instant motion. To the extent these documents are not addressed below, *in camera* review has revealed that the work-product privilege properly has been invoked and no further explanation is deemed necessary by the court. Furthermore, for all the specifically challenged work-product documents that are being withheld after the court's *in camera* review, G&R has failed to show that it has a substantial need and the inability without undue hardship to obtain the substantial equivalent of them by other means. See Fed. R. Civ. P. 26(b)(3). Consequently, G&R's motion for production of these documents will be denied.

**C.     Producible Discovery Documents**

Not all of the documents in Endeavor's privilege log are immune from G&R's discovery requests. After *in camera* review, certain documents listed in Endeavor's privilege log must be produced in response to G&R's motion.

1.   *Documents From or Already Disclosed to Third Parties*

ESTILL 169-71, 172-82, 185, 186–87, and 201 (on 201 only Short's email to G&R starting on the bottom of ESTILL 201) –203 are discoverable. ESTILL 169-71 is an email from a third party to Stephens and Gilmour proposing a potential future transaction. The email was then forwarded by Gilmour to Estill without further comment. Estill 185 is an email from Gilmour to G&R that Gilmour later forwarded to Estill without further comment. Estill 186-87 was initiated as an email from G&R to Stephens. Stephens then forwarded it to Gilmour without further comment. As there is no communication or information emanating from Endeavor on

22

any of these email events and the elements needed to sustain either privilege cannot be inferred from the mere forwarding of the emails, the original emails from the third parties as forwarded do not become clothed with privilege.

Moreover, ESTILL 172-82 and 201 merely reflect communications from or to G&R that Gilmour later forwarded to Estill without further comment. These are discoverable because they came from or were sent to G&R and there is no further communications about or information pertaining to the original disclosures by an Endeavor employee or affiliated individual. These documents do not pertain to obtaining legal advice or formulating legal strategy, were already disclosed to third parties, have no content or context from which to claim they were produced in anticipation of litigation, and were not otherwise confidential.[4] Therefore, these documents must be produced.

      2.     *Confidential, yet Unprivileged Communications Lacking Work-Product Doctrine Protection*

Some of Endeavor's communications might have been considered to be "confidential" from a business perspective but still must be produced because they are not protected by the attorney-client privilege or the work-product doctrine. These documents neither seek, contain or were part of an undertaking to gain legal advice nor involve an undertaking to gather information or formulate legal strategy in anticipation of litigation. ENDEAVOR 735–36 and ESTILL 198–99 are subject to discovery and must be produced.

**D.    Further revision of Endeavor's Privilege Log**

G&R's request to have Endeavor further identify the subject matter and date of certain documents essentially identified in Endeavor's privilege log by the description "note made [by

---

[4] Any argument that the email at ESTILL 186 from Stephens to Gilmour was confidential is unavailing because the email simply forwarded a revised RIDEC draft lease to Gilmour without further comment.

Gilmour] in furtherance of document production" will be granted. When a party withholds information from discovery on the basis of an asserted privilege, Federal Rule of Civil Procedure 26(b)(5)(A) requires that "[t]he party shall make the claim expressly and shall describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5)(A).

"A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." Smithkline v. Beecham Corp. et al., 232 F.R.D. 467, 482 (E.D. Pa. 2005) (quoting Foster v. Berwind Corp., Civ. A. No. 90–0857, 1990 WL 209288, *2, 1990 U.S. Dist. LEXIS 17045, *5 (E.D. Pa. Dec. 10, 1990). Where, as here, a party intends to rely on a privilege log, a certain level of information is required to meet the initial threshold for invoking the privilege:

> [T]ypically the logs will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

Id. (quoting Bowne of N.Y. City, Inc. v. AmBase Corp., 150 F.R.D. 465, 474 (S.D. N.Y. 1993) (other citations omitted)). "[M]ere conclusive or ipsa dixit assertions" fall short of the information needed to present a proper privilege log. Id. (quoting Am. Health Sys., Inc. v. Liberty Health Sys., Civ. A. No. 90–3112, 1991 WL 42310, *5, 1991 U.S. Dist. LEXIS 3675, *13 (E.D. Pa. Mar. 26, 1991).

The information supplied by Endeavor in conjunction with the challenged entries is little more than a mere conclusive statement. Because such statements fall exceedingly short of the detail needed to present a sufficient privilege log, G&R's motion to compel a more detailed description and information for the entries in question will be granted.[5]

## IV.   CONCLUSION

After analyzing Endeavor's attorney-client-privilege and work-product-doctrine arguments, G&R's motion to compel production will be granted as to ENDEAVOR 735–36 and ESTILL 169–71, 172–82, 185, 186–87, 198–99, 201 (starting with the Short email on the bottom of ESTILL 201)–203. The motion to compel production will be denied and the court will issue a protective order as to ENDEAVOR 578, 580–604, 607–21, 646–57, 711–14, 753–57 and ESTILL 1–168, 183–84, 188–97, 200, 201 (not including Short's email to Bradley Reitz on the bottom of ESTILL 201), and 204–362. G&R's motion to compel a more detailed description of the subject matter and date of identified entries in Endeavor's privilege log will be granted and Endeavor will be ordered to provide sufficient information as to comply with the requirements of Rule 26(b)(5)(A) as to the documents identified as Bates labeled ENDEAVOR 575, 578, 605, 689–92, 693–97, 703–05, 707–08, 732–33, 734, 737 and 745. The revised information presented in the privilege log shall at a minimum provide the dates (including those on the face of each document and any further created or revised versions thereof), a sufficient description of the subject matter and any other information necessary to present a proper invocation of the claimed

_____

[5] Of course, G&R is not foreclosed from challenging Endeavor's assertion of privilege as to these documents after it has had an opportunity to review the revised privilege log and assess any challenge it may have at that juncture.

privileges.  An appropriate order will follow.

Date: March 31, 2017


                                        s/David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge


cc:     Denise D. Pentino, Esquire
        William E. Robinson, Esquire
        Randal M. Whitlach, Esquire
        Nicholas J. Godfrey, Esquire
        Dennis J. Roman, Esquire
        Timothy R. Stienstraw, Esquire
        Charlene S. Seibert, Esquire
        Harry F. Kunselman, Esquire
        Trent A. Echard, Esquire
        Joseph M. George, Esquire
        Christopher L. Blackwell, Esquire


        (*Via CM/ECF Electronic Mail*)